IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ABDUL SAHIR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1236 (RWR) |
| | ) | |
| GEORGE W. BUSH, *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate

General's Corps, United States Navy, hereby state that to the best of my knowledge, information,

and belief, the following is true, accurate and correct:

1.      I am the Legal Advisor to the Office for the Administrative Review of the

Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC).  In

that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.      I hereby certify that the documents attached hereto constitute a true and accurate

copy of the portions of the record of proceedings before the Combatant Status Review Tribunal

related to petitioner Abdul Sahir that are suitable for public release.  The portions of the record

that are classified or considered law enforcement sensitive are not attached hereto or were

redacted by an OARDEC staff member.  This staff member also redacted information that would

personally identify certain U.S. Government personnel and foreign nationals in order to protect

the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: _16 august 2005_                               _Teresa A. McPalmer_
                                                          Teresa A. McPalmer
                                                          CDR, JAGC, USN



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: **0450**

**29 NOV 2004**

~~FOR OFFICIAL USE ONLY~~

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 753**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #753 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED

12 Nov 04

MEMORANDUM

From:  Legal Advisor
To:    Director, Combatant Status Review Tribunal

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 753

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal #2 of 2 August 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I find that:

    a.  The detainee was properly notified of the Tribunal process and made a sworn statement at the Tribunal.

    b.  The Tribunal was properly convened and constituted by enclosure (1).

    c.  The Tribunal complied with all provisions of references (a) and (b).

    d.  The detainee made no requests for witnesses or other evidence.

    e.  The Tribunal's decision that detainee # 753 is properly classified as an enemy combatant was unanimous.

    f.  The detainee's Personal Representative was given the opportunity to review the record of proceedings and declined to submit comments to the Tribunal.

2.  The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN

UNCLASSIFIED



# Department of Defense
## Director, Combatant Status Review Tribunals

2 August 2004

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #2

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

           **MEMBERS:**

                ██████████, Colonel, U.S. Marine Corps; President

                ██████████, Lieutenant Colonel, U.S. Army; Member (JAG)

                ██████████, Lieutenant Colonel, U.S. Air Force; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
U.S. Naval Reserve



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

25 September 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# 753

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN██████.

DAVID L. TAYLOR
Colonel, USAF

~~SECRET//NOFORN//X1~~

### (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) (3) and (4).

(U) TRIBUNAL PANEL:    #2

(U) ISN#:    753

Ref:    (a) (U) Convening Order for Tribunal #2 of 2 August 2004 (U)
        (b) (U) CSRT Implementation Directive of 29 July 2004 (U)
        (c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl:   (1) (U) Unclassified Summary of Basis For Tribunal Decision (U)
        (2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
        (3) (U) Summary of Detainee/Witness Testimony (U/~~FOUO~~)
        (4) (U) Copies of Documentary Evidence Presented (S/NF)
        (5) (U) Personal Representative's Record Review (U)

1. (U) This Tribunal was convened on 3 September 2004 by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant, as defined in reference (c).

2. (U) On 3 September 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #753 is properly classified as an enemy combatant, as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, both Al-Qaeda and the Taliban, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

Colonel, U.S. Marine Corps
Tribunal President

UNCLASSIFIED//~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

## (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____ #2 _____
ISN #: _____ 753 _____

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is a member of, or affiliated with, both Al-Qaeda and the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is a member of Al-Qaeda and worked as a translator for a high-ranking Al-Qaeda operative for over three years. He also served as a financial middleman between Al-Qaeda and Taliban members. The detainee chose to participate in the Tribunal process. He requested no witnesses, requested no unclassified or classified documents be produced, but made an oral, sworn statement with the assistance of his Personal Representative. The detainee, in his oral statement, denied being a member of either Al-Qaeda or the Taliban and claimed the evidence presented by the Recorder in Exhibit R-1 had no basis in fact.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a, R-1 through R-20

    b. Testimony of the following persons: Sworn statement of the detainee

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested no witnesses or additional evidence be produced; therefore, no rulings on these matters were required.

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

### 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2, an FBI certification regarding redacted information, provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

    b. Essentially the only unclassified evidence the Tribunal had to consider was the detainee's sworn testimony. A summarized transcript of the detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee testified that the points raised in Exhibit R-1 were without merit and that he did not commit the acts described therein. The other exhibits at Enclosure (2), however, substantially refuted the Detainee's assertions.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

### 6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

### 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

    b. The detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing.

    c. The detainee is properly classified as an enemy combatant because he is a member of, or affiliated with both Al-Qaeda and the Taliban, and was a part of, or supporting, both organizations.

UNCLASSIFIED//~~FOUO~~

**8. Dissenting Tribunal Member's report**

None.  The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Marine Corps
Tribunal President

UNCLASSIFIED//~~FOUO~~

UNCLASSIFIED//~~FOUO~~

## Summarized Sworn Detainee Statement

*(The Detainee requested his written notes from (2) days prior to assist him with his statement. This request was granted and the Personal Representative (PR) handed the notes to the Detainee.)*

*(The Detainee addressed points made in the Unclassified Summary, point by point.)*

*3.a. Detainee is a member of Al Qaida*

> *1. Detainee was a translator for ██████████ a known member of Al Qaida for a period of three years.*

This statement has no basis. I am an Afghan and in Afghanistan there are a lot of political organizations with which I have no affiliation. I would not join a group that is foreign to my country. They (Al Qaida) don't speak the language and are not of our tribe. I would not join a group like Al Qaida, which is a terrorist organization.

At the time, I didn't know that Mr ████ was a member of Al Qaida. I worked for him as a peasant or employee, not a member of the group. My work was to support my family and children. It was only for employment. It was very simple employment and had no political affiliations.

My work with him was only in Afghanistan as an employee, no affiliations of going to another country.

I was an employee when the Taliban was the government of Afghanistan.

> *2. Detainee translated for ████ when he spoke with ████████████ the leader of Taliban soldiers in the North of Kabul.*

██████████ was a very small commander of the Taliban. Translating between Mr. ████ and Mr. ██████ was a common position of my job. I was only working as an employee.

> *3. Detainee is able to identify several members of Al Qaida and the Taliban from his stay in the ASHARA guesthouse.*

This has no basis because I didn't live at the ASHARA guesthouse night and day. When I was there, I was usually sitting with the doorman and the other Afghan

UNCLASSIFIED//~~FOUO~~

workers. I could not talk to the Arabs because Mr. ███ would not allow anyone to talk to the Arabs.

A lot of people came in and out. How could I remember everybody that came and went? Everyone wears the same clothes. You cannot tell rank or position. I don't know how to get the information about who is who, and what group they are.

### 4. Detainee's duties were to safe keep and distribute funds for various Al-Qaida and Taliban members.

This has no basis. When I was working for Mr. ███ I didn't even handle $10 Afghani. I was a worker. When Mr. ███ fled Afghanistan, he told me he left some Afghanis for me (currency) as a trust. It was not for distributing or financing anything.

When the time passed, he asked me to give the money to another gentleman, whom I have nothing to do with. All I did was give the money to another person.

**3.b.    Detainee engaged in hostilities against the United States and/or it's coalition partners.**

This statement has no proof because I never hated the United States, and these are the points to back it. These are the points I make:

I stayed in my country and at home all the time. I didn't go anywhere else. I didn't travel to any foreign country. If I were an enemy, I would have traveled to other foreign countries.

When I was captured, it was in a peaceful and cooperative manner, even though there were weapons in my house. If I were an enemy, I would have fought them off.

You can look at my files and my behavior in this prison over my two-year stay here in jail. I have a great relationship with the MP's, and they can tell you that. It proves I have nothing against…or they are not my enemies. I have a great relationship with the people working in the prison.

If you look at my file over the two years you will see my good behavior. An enemy is not like that. I have conversations with American people, and I have great conversations with them, so how can I be an enemy to them?

I've never been a part of a political organization. How can I have differences with the Americans?

UNCLASSIFIED//~~FOUO~~

I am just a worker from Afghanistan, not a soldier. I have nothing political, or any other reason [to be] against Americans.

I don't have enough education to understand all of the political groups and differences, or what is to hate America or not to hate America. I don't have enough education to get on that level. And from the information I have, I know the United States Constitution, democracy allows freedom of religion, and for this reason, this type of government does not interfere with our religion of Islam. I have no religious differences with Americans, since they allow freedom of religion.

These eight points I have stated show I have no enmity towards the Americans, and never have. So, I am not an enemy. There is no a proof that I could work for an organization that hates the United States.

Point A and B have no factual basis. This concludes my statement.

## Summarized Answers to Questions by Personal Representative

Q:    3b2 says that you were involved in the grenade attack on Western journalists in the spring of 2002. Please share [what you know about this] with the Tribunal.

A:    This is a complete lie. I've never taken part in any bomb attacks or any kind of operations. I knew the people who did the bomb attack and how this got around is because I told the Americans the names of those who did the attack.

There is no proof, and I have never taken part in the operation, I only provided information. I was a prisoner and had no cause to have enemies or create enemies. I gave you the eight points, which prove that I have a great relationship, not an enemy and just a worker. I hope these eight points get across.

## Summarized Answers to Questions by Tribunal Members

Q:    How many languages do you speak?

A:    Farsi [and] Pashtu are our national languages and the only foreign language I know is Arabic.

Q:    Do you understand English, or just some English?

A:    I've learned some in prison.

ISN# 753
Enclosure (3)
Page 3 of 8

UNCLASSIFIED//~~FOUO~~

Q:    Did you learn your languages where you grew up, or did you attend school to learn them?

A:    Farsi and Pashtu are my home languages, so I picked them up from family. Arabic, I took courses for.

Q:    When you translated for ███████, what type of information did you translate?

A:    Basic stuff, relating to simple matters in Kabul. They had to deal with the government, the Taliban, like paperwork for cars, that they had to work with the government for, on the lower level.

Q:    Could he ████ do his job without translation?

A:    Of course. He could have got someone from the Taliban who knew Arabic, or he could have hired another linguist and paid him salary.

Q:    When you mentioned that he left money for safekeeping, which you then transferred, how much money was it?

A:    The money was not directly given to me. It was left with somebody else and I was told to hold it for him.

Q:    How much?

A:    About $40,000.00, a mix of Pakistani and other currency, worth about $40,000.00.

Q:    What do you think of Arabs being present in Afghanistan?

A:    I don't understand, it's beyond my level.

Q:    Personally, are you comfortable being near and around Arabs? If you, here in this camp, were living with Arabs, how would that make you feel?

A:    Arabs don't even look at us or say hi to us. They say we Afghans betrayed them.

Q:    But, what do you think of them?

A:    I think they used Afghanistan for political and different interests. Afghanistan was used.

Q:    What do you think of Westerners being present in Afghanistan?

UNCLASSIFIED//~~FOUO~~

A:     When the Westerners came, I didn't get to see what happened because I went to prison, so I can't comment on that.

Q:     You mentioned that when you turned yourself in, you had weapons in your house. Is that correct?

A:     Every Afghan's home has a gun because they all have differences and the gun is there to protect them.

Q:     How many weapons did you have?

A:     I only had one.

Q:     Was it your personal gun or had it been provided to you?

A:     It was my personal gun.

Q:     You mentioned that you were a prisoner at one time. Where was that?

A:     I was referring to this prison, here.

Q:     When you said earlier in your statement that you did not know ███████ was a member of Al Qaida, who did you believe he was?

A:     I figured he worked for the Taliban, the government at that time. I sought employment with him.

Q:     How long did you work for him?

A:     About three years.

Q:     How long did you work for ███████████████?

A:     I never worked for ███████████. The only time was when I translated for Mr. ███ to Mr.███.

Q:     What is the highest level of education you were able to attain?

A:     I have a high school education.

Q:     On what weapons are you proficient, personally?

A:     Only the gun I protected my house with.

Q:     Have you ever been given any military training?

UNCLASSIFIED//~~FOUO~~

A:    No.

Q:    Just to clarify, concerning the incident with the Western journalists, you are saying that you had nothing to do with the attack on them and it was others who did it?

A:    Yes.

Q:    You knew who did it, and provided the names to the Americans?

A:    Yes.

Q:    In response, your name was turned in and you were blamed for it as well?

A:    I provided names. You should ask whoever put my name in there why they did. The other point is, if I really had a hand in this bombing, how can a person who, when they do such an act...no one who did something would admit to it. I gave all the information. The person would normally be under a lot of pressure to just give all the information. I did that out of help to my country. The statement I gave was not under interrogation. It was voluntary.

Q:    Do you have any feelings, one way or another, concerning the Northern Alliance?

A:    That is above my level to comment on because I have no political affiliations, but as a simple Afghan, I can say it is because of these warlords and the (inaudible) that were fighting, was the reason the Taliban came into power. That is the only comment I can say. They are just part of the other political groups like the Communists or others that have come through Afghanistan and fought or taken power. They are a political organization.

Whoever wants to help Afghanistan right now, that is very good. I am saying this as a common Afghan citizen, not anything else. I want good for my country.

Q:    How long have you been here in the camp?

A:    About 2 years and 2 months. 4 months in Bagram and the rest here.

Q:    Do you believe the Americans have treated you with dignity and respect?

A:    They haven't done anything wrong, very common treatment.

Q:    You are well spoken, thank you.

UNCLASSIFIED//~~FOUO~~

Q:    Referring to the grenade attack on the Western journalists, how did you know the people who were involved?

A:    I knew them from the past. I knew one of them, and the other person was associated with the person I knew.

Q:    Were you there when it occurred?

A:    I was in the area.

Q:    Did you know that it was going to occur?

A:    I did find out and that's when I separated and went my way. I didn't join them.

Q:    When you found out, you allowed the attack to occur anyway and then came to the Americans after the attack had occurred?

A:    I was fearful for my life on both sides. I was fearful of the Americans and fearful that the Taliban might take (inaudible) on his family, so I kept quiet. I had no contact or connections with the Americans at that time. When I was captured and the Americans talked to me, then I knew how they were and I told them the whole story of the bombing.

Q:    Do you consider the government in Afghanistan now to be leading Afghanistan in the correct direction?

A:    I am happy that Afghanistan is heading toward freedom. I only saw a few months of it and people were happy and I am part of the citizens that are happy that this country is moving forward.

Q:    Do you feel that the loya jirga process that brought the government about was the proper way to give them authority?

A:    This is a very good thing because in our history, all governments have been established by the loya jirga. I have heard this from my forefathers and it is a good thing.

Q:    Do you have any other evidence or do you wish to make any other statements in front of this Tribunal?

A:    I just want to say one thing. I admit the Americans have treated me good in this jail. I have had two years of interrogations, and I would like my case to move forward and not let it stop in one place. I am very happy about this process and this committee, and that you guys will give your decision. That's what I want, a fair decision. That is all I have to say.

UNCLASSIFIED//~~FOUO~~

## **AUTHENTICATION**

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



Colonel, U.S. Marine Corps
Tribunal President

2K2
26 Aug 04
Schedule
Final

# DETAINEE ELECTION FORM

**Date:** 8/27/04
**Start Time:** 0815
**End Time:** 0928

**ISN#:** 753

**Personal Representative:** ▓▓▓▓▓▓ / Lt Col
**(Name/Rank)**

**Translator Required?** Yes          **Language?** Pashto

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** YES

**Detainee Election:**

☒  **Wants to Participate in Tribunal**

☐  **Affirmatively Declines to Participate in Tribunal**

☐  **Uncooperative or Unresponsive**

**Personal Representative Comments:**

Very participative.

No witnesses requested.

No prior Representation

Will give sworn oral statement.

Personal Representative ▓▓▓▓▓▓▓▓

EXHIBIT D-c

~~FOUO~~

### Recorder Exhibit List
### For
ISN 

| # | Title | Classification |
|---|-------|----------------|
| R1 | Unclassified Summary | UNCLASSIFIED |
| R2 | FBI Certification Re: Redaction of National Security Information dtd 6 Aug 04 | UNCLASSIFIED |
| R3 | FBI 302 ███████ 29 Oct 02 | FOUO//LES |
| R4 | FBI 302 ███████ 02 Nov 02 | FOUO//LES |
| R5 | FBI 302 ███████ 04 Nov 02 | FOUO//LES |
| R6 | FBI 302 ███████ 02 Jan 03 | FOUO//LES |
| R7 | FBI 302 ███████ 06 Jan 03 | FOUO//LES |
| R8 | FBI 302 ███████ 08 Jan 03 | FOUO//LES |
| R9 | FBI 302 ███████ 10 Jan 03 | FOUO//LES |
| R10 | FBI 302 ███████ 13 Jan 03 | FOUO//LES |
| R11 | FBI 302 ███████ 20 Mar 03 | FOUO//LES |
| R12 | FBI 302 ███████ 03 May 03 | FOUO//LES |
| R13 | FBI 302 ███████ 30 Jul 03 | FOUO//LES |
| R14 | FBI 302 ███████ 11 Aug 03 | FOUO//LES |
| R15 | JTF GTMO Central Asia Assessment Memo 12 Apr 04 | SECRET/NOFORN |
| R16 | CITF Commander Memo 29 Jun 04 | SECRET/NOFORN |
| R17 | JTF GTMO CG Memo 02 Jul 04 | SECRET |
| R18 | ██████████ ECRC | SECRET/NOFORN |
| R19 | JTF GTMO Baseball Card | SECRET/NOFORN |
| R20 | JTF CTMO Detainee Associate, Abdul Hadi | SECRET/NOFORN |

UNCLASSIFIED

## Combatant Status Review Board

16 August 2004

TO: Personal Representative

FROM: Recorder

Subject: Summary of Evidence for Combatant Status Review Tribunal – Detainee ZAHIR, Abdul

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that he is a member of Al-Qaida. He engaged in hostilities against the United States or its coalition partners.

   a. Detainee is a member of Al Qaida.

      1. Detainee was a translator for ███████, a known member of Al Qaida for a period of three years.

      2. Detainee translated for █████ when he spoke with ████████████ ███████ the leader of Taliban soldiers in the North of Kabul.

      3. Detainee is able to identify several members of Al Qaida and the Taliban from his stay in the ASHARA guesthouse.

      4. Detainee's duties were to safe keep and distribute funds for various Al-Qaida and Taliban members.

   b. Detainee engaged in hostilities against the United States and/or it's coalition partners.

      1. Detainee collected and dispersed money for members of the Taliban and Al Qaida, utilizing the funds for operational costs such as food and supplies.

      2. Detainee was involved in a grenade attack on Western journalists in the spring of 2003.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

EXHIBIT R-1



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

August 6, 2004

REQUEST FOR REDACTION OF NATIONAL SECURITY INFORMATION

ISN **753**

Pursuant to the Secretary of the Navy Order of 29 July 2004, Implementation of Combatant Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba, Section D, paragraph 2, the FBI requests redaction of the information herein marked[1]. The FBI makes this request on the basis that said information relates to the national security of the United States[2]. Inappropriate dissemination of said information could damage the national security of the United States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

The FBI certifies the aforementioned redaction contains no information that would support a determination that the detainee is not an enemy combatant.

---

[1]Redactions are marked by means of pink/blue highlighter on the OARDEC provided FBI document.

[2]See Executive Order 12958

EXHIBIT R-2

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FOUO/LES

UNCLASSIFIED//~~FOUO~~

## Personal Representative Review of the Record of Proceedings

I acknowledge that on _23_ September 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #753.

    _X_ I have no comments.

    ___ My comments are attached.



Lt Col ████████ USAF

████████
Signature

_23 Sep 04_
Date

ISN #753
Enclosure (5)