# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE:
GUANTANAMO BAY
 DETAINEE LITIGATION

Misc. No. 08-442 (TFH)
Civil Action Nos.
02-CV-0828, 04-CV-1136, 04-CV-1164,
04-CV-1194, 04-CV-1254, 04-CV-1937,
04-CV-2022, 04-CV-2035, 04-CV-2046,
04-CV-2215, 05-CV-0023, 05-CV-0247,
05-CV-0270, 05-CV-0280, 05-CV-0329,
05-CV-0359, 05-CV-0392, 05-CV-0492,
05-CV-0520, 05-CV-0526, 05-CV-0569,
05-CV-0634, 05-CV-0748, 05-CV-0763,
05-CV-0764, 05-CV-0833, 05-CV-0877,
05-CV-0881, 05-CV-0883, 05-CV-0889,
05-CV-0892, 05-CV-0993, 05-CV-0994,
05-CV-0995, 05-CV-0998, 05-CV-0999,
05-CV-1048, 05-CV-1124, 05-CV-1189,
05-CV-1220, 05-CV-1236, 05-CV-1244,
05-CV-1347, 05-CV-1353, 05-CV-1429,
05-CV-1457, 05-CV-1458, 05-CV-1487,
05-CV-1490, 05-CV-1497, 05-CV-1504,
05-CV-1505, 05-CV-1506, 05-CV-1509,
05-CV-1555, 05-CV-1590, 05-CV-1592,
05-CV-1601, 05-CV-1602, 05-CV-1607,
05-CV-1623, 05-CV-1638, 05-CV-1639,
05-CV-1645, 05-CV-1646, 05-CV-1649,
05-CV-1678, 05-CV-1704, 05-CV-1725,
05-CV-1971, 05-CV-1983, 05-CV-2010,
05-CV-2083, 05-CV-2088, 05-CV-2104,
05-CV-2112, 05-CV-2185, 05-CV-2186,
05-CV-2199, 05-CV-2200, 05-CV-2249,
05-CV-2349, 05-CV-2367, 05-CV-2371,
05-CV-2378, 05-CV-2379, 05-CV-2380,
05-CV-2381, 05-CV-2384, 05-CV-2385,
05-CV-2386, 05-CV-2387, 05-CV-2398,
05-CV-2444, 05-CV-2477, 05-CV-2479,
06-CV-0618, 06-CV-1668, 06-CV-1674,
06-CV-1684, 06-CV-1688, 06-CV-1690,
06-CV-1691, 06-CV-1758, 06-CV-1759,
06-CV-1761, 06-CV-1765, 06-CV-1766,
06-CV-1767, 07-CV-1710, 07-CV-2337,
07-CV-2338, 08-CV-0987, 08-CV-1085,
08-CV-1101, 08-CV-1104, 08-CV-1153,

**08-CV-1185, 08-CV-1207, 08-CV-1221,**
**08-CV-1222, 08-CV-1223, 08-CV-1224,**
**08-CV-1227, 08-CV-1228, 08-CV-1229,**
**08-CV-1230, 08-CV-1231, 08-CV-1232,**
**08-CV-1233, 08-CV-1234, 08-CV-1235,**
**08-CV-1236, 08-CV-1237, 08-CV-1238,**
**08-CV-1310, 08-CV-1360, 08-CV-1440**

**RESPONDENTS' MOTION FOR PARTIAL AND TEMPORARY RELIEF
FROM THE COURT'S JULY 11, 2008 SCHEDULING ORDER**

For the reasons stated herein, Respondents respectfully request that they be excused from the requirement of the Court's July 11, 2008 Scheduling Order (Misc. No. 08-0442) (dkt. no. 53) that respondents produce 50 factual returns by August 29, 2008.  Respondents have already filed eight factual returns this month in cases pending before Judges Leon and Sullivan and are filing today an additional 14 returns, 10 in cases before this Court and 4 in cases before Judge Sullivan, for a total of 22 returns filed this month, as indicated in the chart attached as Exhibit A.   Further, Respondents expect to file additional returns next week.  As explained in detail below and in the public and *in camera*, *ex parte* declarations of the Director of the Central Intelligence Agency submitted herewith,[1] despite diligent and ongoing efforts, Respondents have been unable to complete the filing of 50 factual returns in No. 08-442 in light of significant, national security related complexities encountered in the start-up of the interagency process of developing factual returns in these extraordinary cases.  Respondents deeply regret that they have been unable to complete the initial set of factual returns in the time-frame originally anticipated.  Respondents respectfully seek an additional 30 days to complete the process needed to reach the full production rate of 50 factual returns per month in these cases.  As set forth below, Respondents have completed numerous factual returns to date, and are well underway to completing the first set of 50 returns required by the Court's scheduling order.  Respondents will have completed the production of the first 50 factual returns on a rolling basis before the end of September, and hope to achieve that rate of production each month thereafter.

---

[1] Director Hayden's *in camera*, *ex parte* declaration has been filed through the Court Security Officer.

**OVERVIEW**

As a result of the Supreme Court's decision in *Boumediene v. Bush*, __ U.S. __, 128 S. Ct. 2229 (2008), the United States, for the first time in its history, has had to defend, on the merits, habeas corpus proceedings by or on behalf of individuals detained as enemy combatants by the military overseas. Further, the Government is faced with defending such proceedings *en masse*, with over 250 such proceedings pending, and on an expedited basis. Defending these cases requires an intense inter-agency coordination of efforts. None of the relevant agencies, however, was prepared to handle this volume of habeas cases on an expedited basis when *Boumediene* was decided on June 12, 2008. In the weeks that followed, based on direction from this Court, each agency began rapidly deploying resources to dedicate to this important task, as set forth below. That effort, however, took substantial time – not only to obtain the authorizations needed to redirect employees from their other responsibilities – but also to obtain needed security clearances. Specifically, the Department of Justice ("DoJ"), Department of Defense ("DoD"), the Federal Bureau of Investigation ("FBI"), and the Central Intelligence Agency ("CIA"), have undertaken extraordinary steps in marshaling resources and appropriate personnel, developing processes for gathering and reviewing information, developing pertinent information into a factual return, and vetting such information for use in proceedings in this Court.

As part of this process, all of these agencies began efforts to establish a coordinated plan and system for assembling and reviewing information and developing factual returns, including declarations supporting such returns, appropriate for use in Court. Factual returns are necessarily built upon reports and other materials which are commonly used to disseminate

intelligence to decision-makers throughout the United States Government.  These source documents are created in the ordinary course of military, law enforcement, and intelligence operations by various agencies, including DoD, CIA, and FBI.  Given their nature, these products are classified and their dissemination is strictly controlled.

As the Court is aware, the volume of cases is daunting and the very nature of the proceedings in most of these cases, including issues such as the quanta and burdens of proof and applicable legal standards, remains unsettled.  Processing this sheer volume of cases, with these uncertainties, on a compressed time-frame is inherently challenging, but, as explained below, the task has proven even more difficult than originally envisioned because of the pervasiveness of classified information throughout the relevant records and the need for classified information in presenting the Government's case.  Even once draft factual returns are prepared, they require extensive review for consideration of whether the classified information in the draft returns are appropriately used in court.  Respondents simply did not appreciate the full extent of the challenges posed by the extensive need for classified information in these cases when they proposed to complete the first set of factual returns by the end of August.  As explained in the public and *in camera*, *ex parte* declarations of CIA Director Hayden, the CIA's review of classified information can take up to 30 days.  Because both DoJ and DoD were assembling staff and resources over the month of July, and DoJ began producing the first set of draft factual returns throughout the month of August, that left little time for the CIA's review of sensitive classified information.

Respondents apologize for failing to meet the Court's August 29 deadline.  The Government failed to recognize the full extent of the challenges presented in handling these cases

on an expedited fashion and the particular challenges presented by the use of classified

information.  The full extent of those challenges with respect to attempts to complete the first 50

returns only recently became apparent.  We expect to finish production of the first 50 returns on a

rolling basis throughout September, and hope to achieve production of returns at that rate each

month thereafter.

**RESOURCES AND EFFORT DEVOTED TO PREPARING THE FACTUAL RETURNS**

     **1.**     **Department of Defense**

As noted above, the efforts required to put resources in place to process this volume of

cases have been daunting for each of the Federal agencies involved.  Following this Court's

scheduling order, DoD began detailing attorneys from throughout the Defense Department to

work on the habeas litigation.  *See* Declaration of Daniel J. Dell'Orto ¶ 3 (attached as Exhibit B).

The first of these attorneys arrived in mid-July.  *Id*.  At present approximately 30 attorneys at

DoD are working exclusively on these matters.  *Id*.  DoD is continuing to hire attorneys and

support staff, and anticipates deploying over 50 attorneys and support staff to these cases.  *Id*. ¶ 3

& n.1.

DoD attorneys have been actively involved in gathering and reviewing information for

potential use in the factual returns, including intelligence and law enforcement materials that may

have originated with DoD or other agencies.  *Id*. ¶¶ 4-5.  Once a DoD attorney assigned to a case

has assembled documents for review, they work directly with attorneys from DoJ also assigned to

the case.  *Id*. ¶ 4.  DoD has also diverted intelligence personnel to work full-time in support of

the habeas litigation.  *Id*. ¶ 4.  In addition DoD has created a team of personnel responsible for

seeking use authorization from relevant DoD components.  *Id*. ¶ 6.  Within the past 30 days, that

team has reviewed nearly 1,900 DoD documents (most of them being multi-page documents) for use in the habeas litigation and assisted in developing other supporting documents for the litigation. *Id*. ¶ 7.

### 2.    Department of Justice

Until the Supreme Court's decision in *Boumediene*, DoJ could take only limited steps to prepare for the defense of habeas claims by detainees held at Guantanamo Bay. *See* Declaration of Gregory G. Katsas ¶ 4 (attached as Exhibit C). After *Boumediene* was decided, DoJ committed to assigning or detailing at least 50 attorneys to be dedicated to producing factual returns and litigating the more than 250 habeas cases. *Id*. ¶ 5. A Department-wide initiative was undertaken to identify and shift this team of attorneys from other responsibilities. *Id*. Even before these new attorneys began to arrive, the Civil Division began converting office space it had previously located to house the team to accommodate information technology and other document production resources suitable to the processing of classified information that would form the primary basis of the anticipated returns. *Id*. ¶ 6. Further modification and outfitting of facility resources continues to the present. *Id*.

To date, DoJ has detailed or assigned to the factual return effort more than 50 attorneys from its Washington, D.C., components and the U.S. Attorneys' Offices. *Id*. ¶ 7. The first such detailees arrived in July, and a number of others have reported for the detail throughout the month of August. *Id*. As a practical matter, however, attorneys must clear two distinct hurdles to work on cases of this nature, which entail reviewing significant amounts of classified

information: a security clearance and access to the secure processing system. *Id.* Once attorneys

are detailed to the litigation team, it can take several weeks to obtain such clearance and access.[2]

In crafting a factual return, DoJ and DoD attorneys begin by analyzing the information

about a detainee and by reviewing documents for information that supports the detention (or that

is exculpatory, as that term is understood in this context), and then draft a narrative to attach to

the supporting documents that serves as a summary for the Court and counsel substantiating a

detainee's status and detention as an enemy combatant. *Id.* ¶ 9. The development of an initial

draft return for a detainee and set of supporting materials involve, at the least, the investment of

dozens of man-hours and the review of hundreds of pages of documents and sometimes far more.

*Id.* Collectively, thousands of man-hours have been expended by those directly involved in this

factual return development effort in just the last two months. *Id.* Once classified documents are

identified as being needed for use, DoJ or DoD contacts the originating agencies to seek

clearance for use. *Id.* ¶ 10.

After DoJ receives from the originating agencies responses to its clearance requests,

attorneys crafting the return must undertake to finalize the returns. *Id.* ¶ 11. In certain cases,

however, clearance for use of sensitive information may be central to producing a given habeas

return. If clearance of such documents is denied, attorneys producing the return must re-evaluate

the case, attempt to identify alternate sources of the information that do not implicate sensitive

intelligence equities, and determine a course of action without using the restricted material.

---

[2] Thus, although DoJ now has almost 40 attorneys with security clearances working full time on these cases, throughout the month of August an average number of approximately 20 cleared attorneys have been available for the effort. By late September, DoJ expects to have at least 50 cleared attorneys working full-time on the cases before this Court. Katsas Decl. ¶ 7.

These decisions cannot be completed – indeed, the need to make such decisions does not become apparent – until the initial clearance requests are processed. *Id*.

To expedite the document clearance process, DoJ and DoD began sending exhibit lists associated with draft returns to the CIA in late July and early August. *Id*. ¶ 12. These lists identified the proposed supporting documents for individual draft returns. Shortly thereafter, on or about August 12, DoJ began sending complete packets of draft factual returns on a rolling basis to the CIA for document clearance. To date, DoJ has completed, and CIA has received, draft factual returns pertaining to 59 petitioners in these cases and those before Judges Leon and Sullivan. *Id*.

### 3.    Central Intelligence Agency

CIA Director Hayden has made meeting the Court's schedule a top priority for the Agency and has allocated additional personnel to those components involved in the habeas review process. *See* Declaration of Michael V. Hayden ¶ 6 (attached as Exhibit D). CIA presently has more than fifty attorneys, paralegals, subject matter experts, and classification officials involved in the habeas review process. *Id*. ¶ 6 n.1.

As noted by Director Hayden, much of the information upon which DoD relied in making its enemy combatant determinations, and upon which DoJ proposes to rely in the factual returns derives from classified CIA intelligence reports. *Id*. ¶ 8. The release of classified information outside of the Executive Branch, either to the Court, or to cleared counsel must be assessed by subject-matter experts, to determine whether it would potentially damage the national security. *Id*. ¶ 9. To accommodate detainees' counsel as much as possible, the Government has sought – with rare exception – to rely only on materials that have been authorized for release to the

detainee's cleared counsel in defending a case.  The considerations weighed in determining what material may be released are detailed further below, in the public declaration of Director Hayden, and in greater detail in his *in camera*, *ex parte* declaration.  In addition, Director Hayden is willing to appear before the Court to provide additional information or to answer any questions on an *ex parte* basis, so that he may elaborate on the issues described in his classified declaration. *See id*. ¶ 20.

CIA began receiving and reviewing documents to be included in factual returns in late July and early August, and received the first sets of completed draft factual returns on August 12. It has continued to receive draft factual returns throughout August.  *See id*. ¶ 19.  To date, CIA has completed its clearance review for a total of 19 draft factual returns.  Based on its initial efforts, CIA expects to be able to complete its review of a draft factual return within 30 days of receipt.  *See id*.  With the benefit of increased production of draft factual returns now that DoJ's habeas team is more fully staffed, and lessons learned in working with the first sets of factual returns, CIA expects to be able to increase its rate of review towards accommodating the Court's schedule of 50 returns per month.  *See id*.  Because, however, CIA needs 30 days to review and respond to draft factual returns, and because DoD and DoJ were not able to begin substantially providing draft factual returns until August, Respondents are essentially 30 days behind the Court's schedule.

### REVIEW OF CLASSIFIED INFORMATION FOR USE IN THESE CASES

As explained in the public and *ex parte* declarations of Director Hayden, the release of classified information always, by definition, risks harm to the national security.  *See* Hayden Decl. ¶ 8.  To minimize the risk of harm, such release is governed by several considerations,

including the classification level of the information, the receiving party's clearance and need to

know the information, and the potential harm to sensitive sources or methods of intelligence that

might be implicated. *See generally* Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003)

(Exec. Order 12958, as amended). Expertise on such matters, including potential harms from

dissemination and "need to know" pertaining to such materials, rest with the agencies that "own"

or classified the materials; thus, those agencies must be consulted on whether and how to

authorize release of their information if it is proposed to be included in a factual return. Thus,

any decision for the Government to rely upon a particular piece of classified information in

defending these habeas cases, and the decision to share that information with opposing counsel,

requires extensive review for national security concerns by the agency or agencies which

classified the information. The majority of information in this context is controlled by three

national security agencies: CIA, DoD, and FBI. In essence, each agency must clear the

information contained in its products, or those of other agencies that incorporate those products,

for release to the detainee's cleared counsel (and thus to the Court).

For DoD and the FBI, decisions about whether to authorize the release of sensitive

information may begin once the documents to be used are identified and the narrative is being

drafted. For the CIA, this process begins once the narrative is drafted and the documents to be

used are identified and provided to the Agency, such that the Agency can see the context of

intended use. Moreover, CIA must review virtually every classified document involved in these

cases, regardless of the apparent origination of that document, to determine whether its

dissemination outside the Executive Branch would implicate national security concerns not

immediately apparent to the other agencies involved in the process. For reasons described in the

- 9 -

public and *ex parte* declarations of Director Hayden, the Agency might determine that certain information cannot be released to the detainee's counsel, and thus it is generally not provided to counsel or the Court in a factual return. There are a limited number of CIA subject matter experts who can undertake such assessments. *See* Hayden Decl. ¶ 13. Until such decisions are made, however, DoJ cannot finalize a factual return or file it with the Court. Because of the sheer volume of classified information involved in these cases, filing a return consisting solely of unclassified documents would not provide an appropriately full account of the basis for detention and would not materially assist either petitioners or the Court.

Indeed, the issues involved in clearing documents for use in these habeas proceedings are akin to the consideration and weighing the Government must engage in when choosing between protecting sensitive information or forgoing a prosecution or civil action or remedy. Of course, these cases are neither prosecutions nor affirmative cases by the Government; rather, the Government is responding to challenges to the legality of detention. This inherently requires balancing the national security interests in preventing inappropriate dissemination of sensitive classified information with the national security interests arising from not including particular information in a given detainee's case, thus perhaps substantially weakening the case for detention. These sensitive decisions must often be made on a document-by-document, line-by-line basis. *See* Katsas Decl. ¶ 13; Hayden Decl. ¶ 13.

## RESPONDENTS' REQUEST FOR RELIEF

The Government is keenly aware of the need for expedition in these cases and of the disruption in the Court's planned schedule in the cases and deeply regrets that the schedule has not been met this month. The Government has proceeded with diligence and in good faith, and

has undertaken extraordinary efforts in this unprecedented situation to attempt to meet its goal

and this Court's requirement of 50 returns per month, including, as explained *supra*, drafting 59

factual returns for clearance decision, which reflects the sheer volume of work that has been

completed to date.[3]  Attorneys and others from multiple agencies have worked long and hard,

nights and weekends, under the difficult logistical challenges inherent in working with classified

information.  Nonetheless, the Government is compelled to seek partial and temporary relief

from the 50-return-per-month requirement as it works toward meeting that requirement.

Although the Supreme Court in *Boumediene* noted that detainee habeas proceedings should occur

expeditiously, the Court did not say that inappropriate burdens on national security should be

borne by the American public.  Such burdens are distinctly possible if the sensitive balancing of

national security interests involved in the clearance and use issues discussed *supra* and in the

declarations of Director Hayden is shortchanged.

      The Court also should be aware that the Government is taking steps to streamline and

improve the process related to vetting of factual returns for use in court going forward.  Many of

these efforts are outlined in the declarations of Director Hayden, and the increase in the number

of available, security-cleared personnel at DoD and DoJ should permit a build-up of a queue of

---

[3] While engaged in the resource ramp-up and factual return development effort over the last two months, respondents have also made numerous other filings and appearances in these Guantanamo cases.  For example, respondents have been required to file hundreds of status reports and engage in docket clean-up efforts and negotiations; have appeared in over two dozen status conferences or other hearings before this Court or other Judges of the Court; have filed briefing on procedural framework issues and responded to a number of detainee medical care or other conditions of confinement issues; have provided various records to opposing counsel as ordered by the Court; and have undertaken to address special accommodations  of certain Chinese Uighur detainees at Guantanamo consistent with discussions with Judge Urbina in the cases before him, all the while also dealing with advance notice and other issues associated with the transfer of several detainees.

draft returns so as permit the clearance process to go forward and produce a number of returns approaching the 50 per month requirement soon.  CIA has explained in its declaration that it needs 30 days from the date that a draft factual return is provided by DoJ to complete its clearance review.  Thus, because dozens of draft factual returns already have been provided to CIA, we expect to file completed returns on a rolling basis on a substantially increasing rate. Approximately 50 returns (those due today and others) can be filed on a rolling basis throughout the month of September, beginning as early as next week, and with an extra month of lead-time, we hope to produce returns at that rate in future months.  The difficulties to date have been part of a learning process in an unprecedented and exceedingly complex undertaking in a new area of law.  Lessons learned are being incorporated into the factual return development process in order to attempt to avoid from the outset use of information that would likely give rise to security concerns and hinder timely filing of returns.

The Government will continue to strive to meet the 50-per-month requirement.  However, in light of the challenges associated both with starting up the factual return development process and with the substantive issues encountered in executing that process, and the inherent complexity and sensitivity in reviewing and processing classified information for release to persons outside of the Executive Branch, Respondents anticipate filing by today a total of 22 returns, as indicated in the chart attached as Exhibit A.  Further, Respondents anticipate filing several returns next week and additional returns on a rolling basis throughout the month of September.  The shortfall in the number of returns filed this month and the deviation in the ordered sequencing reflects primarily the clearance issues discussed above, but also several special or unique difficulties and complications regarding specific cases, preventing the filing of

- 12 -

factual returns in those cases.[4]   Including those filed today, Respondents anticipate filing at least

50 factual returns by the end of September, and hope to continue at that rate each month

thereafter.

*   *   *

For the foregoing reasons, the Government respectfully requests that the Court modify its

July 11, 2008 Scheduling Order to relieve Respondents from the requirement that 50 factual

returns be produced by August 29, 2008.  Such relief will give Respondents the additional 30

days of lead time needed due to the complexity and national security sensitivities of these cases

to produce 50 returns by the end of September.

Dated: August 29, 2008                           Respectfully submitted,

                                                 GREGORY G. KATSAS
                                                 Assistant Attorney General

                                                 JOHN C. O'QUINN
                                                 Deputy Assistant Attorney General

---

[4] Respondents are continuing efforts to resolve those issues to permit filing of a return in those cases at the soonest possible date.  In addition, because Respondents misunderstood the Court's intentions regarding processing of factual returns for petitioners who have been approved by DoD for transfer or release from Guantanamo, *see* July 11 Scheduling Order ¶ 2.E, such petitioners were not included for processing of factual returns in August.  Those petitioners will be included going forward and processed consistent with sequencing established in the July 11 Scheduling Order.

_/s/ Terry M. Henry_____
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL AHERN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107

Attorneys for Respondents